UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,     :
                  :
         Plaintiff     :
                  :
v.                  :     Criminal No. 21-CR-00258-TFH
                  :
TROY SARGENT,          :
                  :
         Defendant.   :

### DEFENDANT'S SUPPLEMENT MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT

Defendant, Troy Sargent, submits this supplemental memorandum in support of his motion to dismiss the superseding indictment. (D.E. 32.) At the February 18, 2022, status conference the Court asked the parties to address two previously uncited opinions: United States v. Phomma, 2021 WL 4199961 (D. Or. Sept. 15, 2021) (Jones, D.J.) and United States v. Pugh, No. 1:20-cr-73-TFM (S.D. Ala. May 13, 2021) (Moorer, D.J.). Mr. Sargent maintains that the two opinions illustrate why the indictment against him should be dismissed.[1]

Pugh found an indictment constitutionally insufficient for the way it alleged a violation of 18 U.S.C. § 231(a)(3), which is the same crime alleged against Mr. Sargent in Count One. The rationale that Judge Moorer relied upon in Pugh is the rationale Mr. Sargent relies upon. The court reasoned that indictments that merely "track[] the language of the statute, [] must be

---

[1] Mr. Sargent's supplemental memorandum focuses on Count One and Two, however, consistent with his previous briefing, he maintains that all six counts of the indictment should be dismissed because no count makes factual allegations.

accompanied with a statement of the <u>facts</u> <u>and</u> <u>circumstances</u> that will inform the accused of the specific offense, coming under the general description, with which he is charged." <u>Pugh</u>, at 19 (emphasis added) (citing <u>Hamling v. United States</u>, 418 U.S., 117-18 (1974) and others). Judge Moorer noted that the indictment there, like the one against Mr. Sargent, only repeated the words of the statute without a "To Wit: clause identifying the conduct or some other means to relay exactly what Pugh allegedly did." <u>Pugh</u>, at 20. The court said that "in no way does this satisfy the pleading requirements" and found that "the original Indictment was fatally deficient." <u>Pugh</u>, at 20-21.

The court in <u>Pugh</u> explained what information renders an indictment sufficient. Judge Moorer compared <u>Rupert</u> from the District of Minnesota and noticed that the indictment there "contain[ed] far more detail" including a "statement of the facts" alleging what Rupert did. <u>Pugh</u> at 20.

Before Judge Moorer issued his order, the grand jury in <u>Pugh</u> returned a superseding indictment. The sufficiency of the superseding indictment was evident when compared to the original indictment. <u>Pugh</u>, at 21. The superseding indictment "lead[] with two sections entitled 'General Allegations' and 'Pugh's Contact with Law Enforcement'" that included "facts and circumstances [to] inform [Pugh] of the specific offense, coming under the general description, with which she [was] charged." <u>Pugh</u>, at 21-22. Judge Moorer, therefore, correctly found the superseding indictment was sufficient because it provided a factual basis for the "essential elements"; or as Mr. Sargent has argued, the core of criminality. <u>Pugh</u>, at 23.

In <u>Phomma</u> Judge Jones denied a motion to dismiss based largely upon the same rationale as the one employed by Judge Moorer. Although <u>Phomma</u> might appear inconsistent with <u>Pugh</u>, the two opinions can be reconciled by exploring the arguments made by the parties to Judge Jones. The defendant in <u>Phomma</u> wrote extensively on matters concerning the commerce clause, the First Amendment, and vagueness. <u>Phomma</u>, No. 3:20-cr-00465-JO, D.E. at 11-33.)  He wrote much less on the indictment's sufficiency under the Fifth and Sixth Amendments. <u>Id</u>. at 34-35. The government did the same. <u>Id</u>, D.E. 24 at 26-28. The government's short argument asked Judge Jones to draw upon the "criminal complaint" together with "police reports and surveillance video … [which] clarified [that the Defendant's] role [was] in deploying bear spray against the officers during the civil disorder that night." <u>Phomma</u>, 2021 WL 4199961 at *6 (brackets added). Unfortunately, neither party warned Judge Jones that he could not look to the criminal complaint and police reports when assessing the sufficiency of an indictment. Without the warning Judge Jones did what the government asked; he looked to the indictment for the crime's elements and to police reports and the surveillance video for the defendant's conduct. <u>Phomma</u>, 2021 WL 4199961 at *6-7.

A district court may not look to the indictment for the elements and to other documents for the alleged conduct; both must appear in the indictment. When testing the sufficiency of the charges in an indictment, a district court "is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." <u>United States v. Sunia</u>, 643 F. Supp. 2d

51, 60 (D.C.C. Aug. 11, 2009) (Walton, J.) (emphasis original). "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001); United States v. Ring, 628 F. Supp. 2d 195, 204 (D.D.C. 2009); United States v. Mostofsky, 2021 WL 3168501 (D.D.C. July 27, 2021) (Boasberg, J.) (recognizing that the judge may not look beyond the indictment in a Rule 12 motion); United States v. Hillie, 227 F. Supp. 3d 57, 70 (D.D.C. Jan. 5, 2017) (Jackson, J.) ("an indictment must contain every element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* ...") (emphasis original).

Had the parties in Phomma warned Judge Jones that he must adhere to the language of the indictment, Phomma likely would have aligned with Pugh. Although the filings do not explain why, Phomma has since been dismissed without prejudice. Phomma, No. 3:20-cr-00465-JO, D.E. 41.

The government has suggested that facts from outside the indictment establish Mr. Sargent's conduct. For the reasons stated above and in previous briefing, the Court should not look beyond the indictment for factual allegations. Sunia, 643 F. Supp. 2d at 60; Hitt, 249 F.3d at 1016; Ring, 628 F. Supp. 2d at 204; Mostofsky, 2021 WL 3168501; Hillie, 227 F. Supp. 3d at 70.

Counsel located three additional cases that illustrate how the indictment against Mr. Sargent is insufficient. Unlike the indictments in the cases that follow, Mr. Sargent's indictment contains no factual allegations associated with

the *actus reus* elements. Judge Kelly rightly denied a motion to dismiss another Capitol defendant's 18 U.S.C. § 231(a)(3) count where the First Superseding Indictment contained many pages of factual allegations that explained in "great detail" "how the defendants are alleged to have committed" the crime. United States v. Nordean, 2021 U.S. Dist. LEXIS 246752 (D.D.C. Dec. 28, 2021) (Kelly, D.J.) Indeed, the Nordean indictment incorporated 60 paragraphs of factual information into the 18 U.S.C. § 231(a)(3) allegation. (Exh. A (Nordean Indictment).) Such an indictment should not be dismissed.

Judge Noreika in the District of Delaware correctly denied a motion to dismiss an 18 U.S.C. § 231(a)(3) count originating from a protest after George Floyd's death where the indictment specified "that Defendant caused damage to a police officer's police vehicle by throwing a hard projectile through the back window of the vehicle while the police officer was engaged in the lawful performance of official duties." United States v. Wood, 2021 U.S. Dist. LEXIS 134774, at *24-26 (D. Del. July 20, 2021) (Noreika, D.J.).

Finally, Judge Brasel in the District of Minnesota denied a motion to dismiss an 18 U.S.C. § 231(a)(3) count from another George Floyd death related prosecution where the indictment alleged that he "pass[ed] out explosive devices and encouraged others to throw those devices, obstructing, delaying, and adversely affecting interstate commerce and federally protected functions." United States v. Rupert, 2021 U.S. Dist. LEXIS 46798 (D. Minn. Mar. 12, 2021)

(Brasel, D.J.).[2] These above indictments did what Mr. Sargent's does not—they provide factual allegations detailing the defendant's alleged conduct. Mr. Sargent's indictment should be dismissed as insufficient.

The Court ordered the government to produce a bill of particulars and it has done so. However, for many of the same reasons given above, "it is a settled rule that a bill of particulars cannot save an invalid indictment." Russell v. United States, 369 U.S. 749, 770 (1962). An indictment may not be amended except by resubmission to the grand jury. United States v. Thomas, 444 F.3d 919, 922-23 (D.C. Cir. 1971) (dismissing an indictment that lacked factual particularity and holding the error could not be remedied by a bill of particulars).

Conclusion

For the reasons stated above, all six counts of the superseding indictment naming Mr. Sargent as defendant should be dismissed for failure to state offenses.

---

[2] The Rupert indictment also alleged "that many members of law enforcement and the National Guard were deployed in response to civil disorder, including arson and looting, following the death of George Floyd" and that the "civil disorder damaged businesses engaged in interstate commerce, adversely affecting it and federally protected functions." Id.

TROY SARGENT
By his attorneys,


_/s/ Joshua R. Hanye_
Joshua R. Hanye
MA B.B.O. No. 661686
Joshua_Hanye@fd.org

Wade Zolynski
MT Bar No. 6088
Wade_Zolynski@fd.org

Federal Defender Office
51 Sleeper Street
Boston, MA  02210
Tel: 617-223-8061


<u>Certificate of Service</u>

I hereby certify that this document was sent electronically to those registered through ECF on February 25, 2022.

_/s/ Wade Zolynski_
Wade Zolynski

# Exh. A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term

### Grand Jury Sworn in on January 8, 2021

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-cr-175 (TJK)** |
| | : | |
| v. | : | **MAGISTRATE NOS.** |
| | : | **21-mj-126, 21-mj-195** |
| **ETHAN NORDEAN,** | : | |
| also known as "Rufio Panman," | : | **VIOLATIONS:** |
| (Counts 1, 2, 3, 4, 5, 6) | : | **18 U.S.C. § 371** |
| | : | **(Conspiracy)** |
| **JOSEPH BIGGS,** | : | |
| (Counts 1, 2, 3, 4, 5, 6) | : | **18 U.S.C. §§ 1512(c)(2), 2** |
| | : | **(Obstruction of an Official Proceeding and** |
| **ZACHARY REHL, and** | : | **Aiding and Abetting)** |
| (Counts 1, 2, 3, 4, 5, 6) | : | |
| | : | **18 U.S.C. §§ 231(a)(3), 2** |
| **CHARLES DONOHOE,** | : | **(Obstruction of Law Enforcement During** |
| (Counts 1, 2, 3, 4, 5, 6) | : | **Civil Disorder and Aiding and Abetting)** |
| | : | |
| | : | **18 U.S.C. §§ 1361, 2** |
| Defendants. | : | **(Destruction of Government Property and** |
| | : | **Aiding and Abetting)** |
| | : | |
| | : | **18 U.S.C. § 1752(a)(1)** |
| | : | **(Entering and Remaining in a Restricted** |
| | : | **Building or Grounds)** |
| | : | |
| | : | **18 U.S.C. § 1752(a)(2)** |
| | : | **(Disorderly Conduct in a Restricted** |
| | : | **Building or Grounds)** |

## FIRST SUPERSEDING INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates

and at or about the times stated below:

## Introduction

### *The 2020 United States Presidential Election and the Official Proceeding on January 6, 2021*

1. The 2020 United States Presidential Election occurred on November 3, 2020.

2. The United States Electoral College ("Electoral College") is a group required by the Constitution to form every four years for the sole purpose of electing the president and vice president, with each state appointing its own electors in a number equal to the size of that state's Congressional delegation.

3. On December 14, 2020, the presidential electors of the Electoral College met in the state capital of each state and in the District of Columbia and formalized the result of the 2020 U.S. Presidential Election: Joseph R. Biden, Jr. and Kamala D. Harris were declared to have won sufficient votes to be elected the next president and vice president of the United States.

4. On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate ("the Joint Session") convened in the United States Capitol ("the Capitol") to certify the vote of the Electoral College of the 2020 U.S. Presidential Election ("the Electoral College vote").

### *The Proud Boys*

5. The Proud Boys describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. There is an initiation process for new members of the Proud Boys, and members often wear black and yellow polo shirts or other apparel adorned with Proud Boys logos to public events.

6. The Proud Boys organization has a national chairman, referred to here as Proud Boys Chairman, and is led by group of individual members known as the "Elders" chapter.

2

Throughout the United States, there are local Proud Boys chapters, which are typically led by chapter "presidents."

*Conspirators*

7.      ETHAN NORDEAN, also known as "Rufio Panman," is a 30-year-old resident of Auburn, Washington. NORDEAN is a member of Proud Boys Elders chapter and president of his local chapter.

8.      JOSEPH BIGGS, also known as "Sergeant Biggs," is a 37-year-old resident of Ormond Beach, Florida. BIGGS is a member of the Proud Boys and a self-described organizer of certain Proud Boys events.

9.      ZACHARY REHL is a 35-year-old resident of Philadelphia, Pennsylvania. REHL is the president of his local chapter of Proud Boys.

10.     CHARLES DONOHOE is a 33-year-old resident of Kenersville, North Carolina. DONOHOE is the president of his local chapter of Proud Boys.

*The Attack at the U.S. Capitol on January 6, 2021*

11.     On December 19, 2020, plans were announced for a Stop the Steal protest event in Washington, D.C. on January 6, 2021, which protest would coincide with Congress's certification of the Electoral College vote.

12.     On December 29, 2020, Proud Boys Chairman posted a message on social media that read, in part, that the Proud Boys planned to "turn out in record numbers on Jan 6th but this time with a twist . . . . We will not be wearing our traditional Black and Yellow. We will be incognito and we will be spread across downtown DC in smaller teams. And who knows . . . we might dress in all BLACK for the occasion." At different times, NORDEAN, BIGGS, REHL, and DONOHOE reiterated that Proud Boys members should avoid wearing Proud Boys colors on January 6, 2021.

3

13.    On January 6, 2021, only authorized individuals with appropriate identification were allowed on the Capitol grounds or inside the Capitol building. The Capitol is secured 24 hours a day by United States Capitol Police ("Capitol Police") and permanent and temporary barriers that restrict access to the Capitol grounds and building.

14.    On January 6, 2021, at 12:45 p.m., a large crowd began to gather outside the Capitol perimeter, including near a pedestrian entrance to the Capitol grounds on First Street, Northwest, near the Peace Monument. Among those present were NORDEAN, BIGGS, REHL, and DONOHOE, each of whom had travelled to Washington, D.C. prior to January 6, 2021, as well as many other Proud Boys members who had been marching with them throughout the day.

15.    The First Street pedestrian entrance was guarded by Capitol Police. Prominent signs posted on metal barriers at the pedestrian entrance and other locations stated, "AREA CLOSED By order of the United States Capitol Police Board."

16.    At 12:53 p.m., a group of people forcibly breached the barriers at the pedestrian entrance. A crowd followed, including NORDEAN, BIGGS, REHL, and DONOHOE. Members of the crowd charged past the trampled police barriers.

17.    At 1:00 p.m., the Joint Session convened in the Capitol to certify the Electoral College vote.  Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session, and Vice President-elect Harris was also present.

18.    Outside the Capitol, between 12:53 and 2:00 p.m., law enforcement struggled to maintain control of the growing crowd, which included NORDEAN, BIGGS, REHL, and DONOHOE.

19.    Crowd members eventually forced their way through, up, and over additional Capitol Police barricades and advanced to the building's exterior façade. Capitol Police officers

4

attempted to maintain order and stop the crowd from entering the Capitol building—the doors and windows of the Capitol building were at that time locked or otherwise secured.

20.     By 2:13 p.m., crowd members had begun to force entry into the Capitol building by breaking windows and ramming open doors. The crowd was not lawfully authorized to enter or remain inside the Capitol building, and no crowd member submitted to security screenings or weapons checks by Capitol Police or other security officials. Other crowd members encouraged and otherwise assisted the forced entry, affording NORDEAN, BIGGS, and REHL the ability to enter the Capitol building.

21.     Shortly after the Capitol had been breached, at 2:20 p.m., members of the House and Senate (including Vice President Pence)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers. The Joint Session was halted while Capitol Police and other law-enforcement officers worked to restore order and clear the Capitol building and grounds of the unlawful occupants.

22.     Later that night, law enforcement regained control of the Capitol building and grounds. At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, who had remained within the Capitol building in a secure location throughout these events.

23.     In the course of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted. The Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue from pepper spray, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order. Additionally, many media members were assaulted and had cameras and other news-gathering equipment destroyed.

24.     NORDEAN, BIGGS, REHL and DONOHOE celebrated the events of the January 6, 2021, through communications on social media and in encrypted chat messages. For example:

    a. NORDEAN posted a message on social media that included a picture of a Capitol Police Officer administering pepper spray on January 6, 2021, with a caption that read, in part, ". . . if you feel bad for the police, you are part of the problem. They care more about federal property (our property) than protecting and serving the people. BACK THE BLACK AND YELLOW".

    b. BIGGS posted a message on social media that read "what a day".

    c. REHL posted a message that read, in part, "I'm proud as fuck what we accomplished yesterday, but we need to start planning and we are starting planning, for a Biden presidency."

    d. DONOHOE posted a message that read, in part, "We stormed the capitol unarmed" and then "And we took it over unarmed."

## COUNT ONE
### (Conspiracy—18 U.S.C. § 371)

25.     The introductory allegations set forth in paragraphs 1 through 24 are re-alleged and incorporated by reference as though set forth herein.

### The Conspiracy

26.     From as early as November 3, 2020, through January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**ETHAN NORDEAN,**
**JOSEPH BIGGS,**
**ZACHARY REHL, and**
**CHARLES DONOHOE,**

did knowingly combine, conspire, confederate, and agree with each other and others known and unknown, to commit offenses against the United States, namely, (1) to corruptly obstruct, influence, and impede an official proceeding, that is, Congress's certification of the Electoral College vote, and to attempt to do so, in violation of Title 18, United States Code, Section 1512(c)(2), and (2) to obstruct, impede, and interfere with law enforcement officers engaged in the lawful performance of official duties incident to and during the commission of a civil disorder, in violation of Title 18, United States Code, Section 231(a)(3).

### Objects of the Conspiracy

27.     The objects of the conspiracy were (1) to stop, delay, or hinder Congress's certification of the Electoral College vote, and (2) to obstruct and interfere with law enforcement officers engaged in their official duties to protect the Capitol and its occupants from those who had unlawfully advanced onto Capitol grounds.

### Manner and Means

28.     NORDEAN, BIGGS, REHL, and DONOHOE with others known and unknown, carried out the conspiracy through the following manner and means, among others, by:

a. Encouraging members of the Proud Boys and others to attend the Stop the Steal protest in Washington, D.C., on January 6, 2021;

b. Using websites, social media, and other electronic communications to raise funds to support travel and equipment purchases for the visit to Washington, D.C.;

c. Obtaining paramilitary gear and supplies—including concealed tactical vests, protective equipment, and radio equipment—for the January 6 attack;

d. Scheming to evade detection by law enforcement on January 6 by dressing "incognito" rather than wearing Proud Boys colors that had been prominently displayed at previous events;

e. Traveling to Washington, D.C. prior to the January 6 attack;

f. Engaging in meetings and encrypted communications in Washington, D.C., on the days leading up to January 6, and on the morning of January 6, to engage in planning for the January 6 attack;

g. Using programmable handheld radios, encrypted messaging applications, and other communications equipment to communicate and coordinate the January 6 attack;

h. Dismantling metal barricades that had been deployed to protect law enforcement and occupants of the Capitol;

i. Storming past barricades, Capitol Police, and other law enforcement officers in efforts to disrupt the proceedings at the Capitol; and

j. Obtaining entry into the Capitol building as a result of damage to windows and doors that otherwise would have precluded entry.

29. NORDEAN, BIGGS, and REHL with others known and unknown, further advanced the purpose of the conspiracy by forcibly entering the Capitol.

30. DONOHOE with others known and unknown, further carried out the conspiracy by entering the west plaza of the Capitol and interfering with law enforcement officers' attempts to control the crowd by assisting the crowd in its final push up the stairs that led to the Capitol.

## Overt Acts

31. On November 5, 2020, BIGGS posted on social media, "It's time for fucking War if they steal this shit."

8

32.     On November 16, 2020, NORDEAN posted on social media "What's more disturbing to me than the Dems trying to steal this election, is how many people . . . just accepted Biden won, despite the obvious corruption... Luke warm Patriots are dangerous."

33.     On November 24, 2020, BIGGS, in response to a social media post calling for unity in response to the results of the presidential election, posted "No bitch.  This is war."

34.     On November 27, 2020, NORDEAN posted on social media "We tried playing nice and by the rules, now you will deal with the monster you created. The spirit of 1776 has resurfaced and has created groups like the Proudboys and we will not be extinguished. We will grow like the flame that fuels us and spread like love that guides us. We are unstoppable, unrelenting and now . . .unforgiving. Good luck to all you traitors of this country we so deeply love . . . you're going to need it."

35.     On November 27, 2020, REHL posted on social media "Hopefully the firing squads are for the traitors that are trying to steal the election from the American people."

36.     On December 23, 2020, REHL posted on social media describing January 6, 2021, as "the day where Congress gets to argue the legitimacy of the [E]lectoral [C]ollege votes, and yes, there will be a big rally on that day."

37.     On December 27, 2020, NORDEAN created an online crowdfunding campaign which solicited donations for "Protective gear and communications" to be used by the Proud Boys on January 6, 2021.  NORDEAN shared a link to this crowdsourcing campaign on his social media page and encouraged others to share it on their social media pages.

38.     On December 30, 2020, REHL posted a link to an online fundraiser with the campaign name of "Travel Expenses for upcoming Patriot Events." The campaign generated over $5,500 in donations between December 30, 2020, and January 4, 2021.

9

39.     On January 4, 2021, shortly after Proud Boys Chairman's arrest pursuant to a warrant issued by D.C. Superior Court, DONOHOE expressed concern that encrypted communications that involved Proud Boys Chairman would be compromised when law enforcement examined Proud Boys Chairman's phone. DONOHOE then created a new channel on the encrypted messaging application, entitled "New MOSD," and took steps to destroy or "nuke" the earlier channel. After its creation, the "New MOSD" channel included NORDEAN, BIGGS, REHL, DONOHOE, and a handful of additional members.

40.     On January 4, 2021, at 7:15 p.m., DONOHOE posted a message on various encrypted messaging channels, including New MOSD, which read, "Hey have been instructed and listen to me real good! There is no planning of any sorts. I need to be put into whatever new thing is created. Everything is compromised and we can be looking at Gang charges." DONOHOE then wrote, "Stop everything immediately" and then "This comes from the top."

41.     On January 4, 2021, at 8:20 p.m., an unindicted co-conspirator ("UCC-1") posted to New MOSD channel: "We had originally planned on breaking the guys into teams. Let's start divying them up and getting baofeng channels picked out."[1]

42.     On January 5, 2021, at 1:23 p.m., a new encrypted messaging channel entitled "Boots on the Ground" was created for communications by Proud Boys members in Washington, D.C. In total, over sixty users participated in the Boots on the Ground channel, including NORDEAN, BIGGS, REHL, DONOHOE, and UCC-1. Shortly after the channel's creation, BIGGS posted a message to the channel that read: "We are trying to avoid getting into any shit tonight. Tomorrow's the day" and then "I'm here with rufio and a good group[.]"

---

[1]     Baofeng is a manufacturer of handheld radios and other communications equipment.

43. Later that evening, BIGGS posted a message to Boots on the Ground channel that read, "Just trying to get our numbers. So we can plan accordingly for tonight and go over tomorrow's plan."

44. Subsequently, REHL, who was travelling to Washington, D.C., on January 5, 2021, stated that he was bringing multiple radios with him, and that there was a person who was planning to program the radios later that evening.

45. On January 5, 2021, at 8:28 p.m., a message was posted to the Boots on the Ground channel that read: "Everyone needs to meet at the Washington Monument at 10am tomorrow morning! Do not be late! Do not wear colors! Details will be laid out at the pre meeting! Come out at as patriot!"

46. At 9:03 p.m., REHL notified NORDEAN, BIGGS, DONOHOE and others that he had arrived in Washington, D.C. DONOHOE responded by requesting one of the radios that REHL had brought.

47. At 9:09 p.m., UCC-1 broadcast a message to the New MOSD and Boots on the Ground channels that read: "Stand by for the shared baofeng channel and shared zello channel, no Colors, be decentralized and use good judgement until further orders" UCC-1 also wrote, "Rufio is in charge, cops are the primary threat, don't get caught by them or BLM, don't get drunk until off the street." UCC-1 then provided a specific radio frequency of 477.985.

48. At 9:17 p.m., BIGGS posted a message on New MOSD that read, "We just had a meeting woth [sic] a lot of guys. Info should be coming out" and then posted "Just spoke with [first name of Proud Boys Chairman.]" At approximately 9:20 p.m., BIGGS posted a message that read, "We have a plan. I'm with rufio." DONOHOE responded, "What's the plan so I can pass it

11

to the MOSD guys." BIGGS responded, "I gave [first name of Proud Boys Chairman] a plan. The one I told the guys and he said he had one."

49. At 6:37 a.m. on January 6, 2021, DONOHOE posted a message to the New MOSD that asked, "Are we gonna do a commanders briefing before the 10 a.m.?"

50. Subsequently, DONOHOE communicated to others that he was on his way to the Washington Monument. He added, "I have the keys until Rufio and Zach show up."

51. On January 6, 2021, at 10:00 a.m., a group of Proud Boys members gathered near the Washington Monument.

52. Shortly after 10:00 a.m., NORDEAN, BIGGS, and REHL led the group, which included DONOHOE, to the east side of the Capitol.

53. Consistent with the directive issued by Proud Boys Chairman, NORDEAN, BIGGS, REHL, DONOHOE, and others, the group of men standing with NORDEAN, BIGGS, REHL, and DONOHOE were not wearing Proud Boys colors of black and yellow. Several men in the group, including BIGGS and REHL, were holding walkie-talkie style communication devices. At different times, NORDEAN and BIGGS carried and used a bullhorn to direct the group.

54. Shortly before 12:53 p.m., NORDEAN, BIGGS, and REHL led the group, which included DONOHOE, to the First Street pedestrian entrance, which was secured by a small number of Capitol Police who were standing behind waist height metal barriers. BIGGS led the assembled crowd in a series of chants using a megaphone. NORDEAN, REHL, and DONOHOE stood nearby.

55. Shortly after 12:53 p.m., NORDEAN, BIGGS, REHL, and DONOHOE charged toward the Capitol by crossing over the barriers that had been violently disassembled and trampled by the crowd moments before NORDEAN, BIGGS, REHL, and DONOHOE advanced.

12

56.     As the crowd approached additional sets of metal barriers, certain individuals who had arrived at the First Street pedestrian gate with NORDEAN, BIGGS, REHL, and DONOHOE removed additional metal barriers. NORDEAN positioned himself near the front of the crowd as these events took place. As these events unfolded, messages were posted to encrypted messaging boards used by NORDEAN, BIGGS, REHL, and DONOHOE that people were "storming" the Capitol.

57.     NORDEAN, BIGGS, REHL, and DONOHOE advanced toward the west plaza of the Capitol where additional metal barricades and law enforcement were deployed to protect the Capitol and its occupants from the advancing crowd.

58.     While standing next to one another, NORDEAN and BIGGS shook a metal barricade, with Capitol police on the other side of the barricade, until NORDEAN and BIGGS and others in the crowd were able to knock it down. The crowd, including NORDEAN, BIGGS, REHL, and DONOHOE, advanced past the trampled barricade.

59.     Upon arriving at the west plaza, NORDEAN, BIGGS, and REHL positioned themselves at or near the front of the crowd. Upon arriving at the police line, BIGGS took a video in which he announced, "we've just taken the Capitol."

60.     NORDEAN paced at the edge of the line of law enforcement while the group that he had led to the First Street gate spread out in the west plaza of the Capitol.

61.     Around 2:00 p.m., DONOHOE assisted the crowd's effort to advance up a flight of stairs toward the Capitol. The crowd overwhelmed law enforcement who were attempting to stop the crowd from advancing.

62.     At 2:14 p.m., BIGGS entered the Capitol building through a door on the northwest side. The door was opened after a Proud Boys member, Dominic Pezzola, charged elsewhere, used

a riot shield at 2:13 p.m. to break a window that allowed rioters to enter the building and force

open an adjacent door from the inside. BIGGS and Proud Boys members Gilbert Garcia, William

Pepe, and Joshua Pruitt, each of whom are charged elsewhere, entered the same door within two

minutes of its opening. At 2:19 p.m., a member of the Boots on the Ground channel posted, "We

just stormed the capitol."

63.     BIGGS subsequently exited the Capitol, and BIGGS and several Proud Boys posed

for a picture at the top of the steps on the east side of the Capitol.

64.     Thirty minutes after first entering the Capitol on the west side, BIGGS and two

other members of the Proud boys, among others, forcibly re-entered the Capitol through the

Columbus Doors on the east side of the Capitol, pushing past at least one law enforcement officer

and entering the Capitol directly in front of a group of individuals affiliated with the Oath

Keepers.[2]

65.     After re-entering the Capitol by force, BIGGS and another member of the Proud

Boys traveled to the Senate chamber.

66.     NORDEAN entered and remained in the Capitol, including in the Rotunda, before

exiting the Capitol with another member of the Proud Boys.

67.     REHL entered the Capitol at approximately 2:53 p.m. through the same door first

entered by BIGGS on the west side of the building.

68.     At 3:38 p.m., as some rioters were leaving the Capitol, DONOHOE announced on

the Boots on the Ground channel, "[w]e are regrouping with a second force."

---

[2]     The Oath Keepers are a large but loosely organized collection of individuals, some
of whom are associated with militias.  The organization's name alludes to the oath sworn by
members of the military and police to defend the Constitution "from all enemies, foreign and
domestic."

(In violation of Title 18, United States Code, Section 371)

## COUNT TWO
### (18 U.S.C. §§ 1512(c)(2), 2)—Obstruction of an Official Proceeding and Aiding and Abetting)

69.  Paragraphs 1 through 24 and paragraphs 31 through 68 of this Indictment are re-alleged and incorporated as though set forth herein.

70.  On January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**ETHAN NORDEAN,**
**JOSEPH BIGGS,**
**ZACH REHL, and**
**CHARLES DONOHOE**

attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, and did aid and abet others known and unknown to do the same; that is, **NORDEAN, BIGGS, REHL,** and **DONOHOE** unlawfully entered the Capitol grounds or the Capitol building to, and did, stop, delay, and hinder Congress's certification of the Electoral College vote.

(In violation of Title 18, United States Code, Sections 1512(c)(2), 2)

## COUNT THREE
### (18 U.S.C. §§ 231(a)(3), 2)— Obstruction of Law Enforcement During Civil Disorder and Aiding and Abetting)

71.  Paragraphs 1 through 24 and paragraphs 31 through 68 of this Indictment are re-alleged and incorporated as though set forth herein.

72.  On January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**ETHAN NORDEAN,**
**JOSEPH BIGGS,**
**ZACH REHL, and**
**CHARLES DONOHOE**

15

committed and attempted to commit an act to obstruct, impede, and interfere with law enforcement officers lawfully engaged in official duties incident to and during the commission of a civil disorder, and did aid and abet others known and unknown to do the same, and the civil disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function.

(In violation of Title 18, United States Code, Sections 231(a)(3), 2()

### COUNT FOUR
**(18 U.S.C. §§ 1361, 2)—Destruction of Government Property and Aiding and Abetting)**

73.     Paragraphs 1 through 24 and paragraphs 31 through 68 of this Indictment are re-alleged and incorporated as though set forth herein.

74.     On January 6, 2021, in the District of Columbia and elsewhere, the defendants,

**ETHAN NORDEAN,**
**JOSEPH BIGGS,**
**ZACH REHL, and**
**CHARLES DONOHOE**

attempted to, and did, willfully injure and commit depredation against property of the United States, and did aid and abet others known and unknown to do so; that is, **NORDEAN, BIGGS, REHL,** and **DONOHOE** together and with others known and unknown, aided and abetted others known and unknown to forcibly enter the Capitol and thereby caused damage to the building in an amount more than $1,000.

(In violation of Title 18, United States Code, Sections 1361, 2)

### COUNT FIVE
**(18 U.S.C. § 1752(a)(1)—Entering and Remaining in a Restricted Building or Grounds)**

75.     Paragraphs 1 through 24 and paragraphs 31 through 68 of this Indictment are re-alleged and incorporated as though set forth herein.

16

76.     On January 6, 2021, within the District of Columbia and elsewhere, the defendants,

**ETHAN NORDEAN,**
**JOSEPH BIGGS,**
**ZACH REHL, and**
**CHARLES DONOHOE**

did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-Elect were temporarily visiting, without lawful authority to do so.

(In violation of Title 18, United States Code, Section 1752(a)(1))

## <u>COUNT SIX</u>
**(18 U.S.C. § 1752(a)(2)—Disorderly Conduct in a Restricted Building or Grounds)**

77.     Paragraphs 1 through 24 and paragraphs 31 through 68 of this Indictment are re-alleged and incorporated as though set forth herein.

78.     On January 6, 2021, within the District of Columbia and elsewhere, the defendants,

**ETHAN NORDEAN,**
**JOSEPH BIGGS,**
**ZACH REHL, and**
**CHARLES DONOHOE**

did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-Elect were temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

(In violation of Title 18, United States Code, Section 1752(a)(2))

17

A TRUE BILL

FOREPERSON

Channing D. Phillips / jfc

CHANNING D. PHILLIPS
ACTING U.S. ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA

18